## ROBERTSON v. SMITH.

A party to a contract will not be relieved against a mistake which has resulted from his own carelessness and inattention, where there has been no misrepresentation or concealment by the other party.

Where an executory contract of sale of several articles of property, including a judgment, was made by and between a seller and four purchasers, one of the latter acting for himself and co-purchasers, and afterwards, when the active purchaser called upon the seller to execute the contract of sale, the latter refused to assign the judgment, on the ground that he did not understand it to be included and was misled, whereupon the active purchaser agreed to release the seller from transferring the judgment, provided his co-purchasers (who were several hundred miles distant) would assent to it, and the active purchaser received the other articles, and his co-purchasers received them also, expressing their dissent however, of which no notice was given to the seller, it was held that the purchasers, when sued for the purchase money, could claim an assignment of the judgment, but no more.

Where A was the plaintiff in a judgment, but there was a question whether B had not become the purchaser of it, and the latter caused execution to be issued, which he sent to C with directions to call upon A for instructions, and A replied, when so called upon, that he did not know whether he was the owner of the judgment or not, and refused to give any instructions upon the subject, and C, acting under instructions from B, levied upon and sold property to which the defendant in execution had no title, becoming himself the purchaser in the name of the plaintiff, whereby the judgment was satisfied ; *Held*, That C was the agent of B, and not of A.

Appeal from Travis.   The appellee brought suit against the appellant, jointly with Webb & Horton and the heirs of Chalmers, on certain promissory notes, and a mortgage given to secure their payment.

The defendants answered, in substance, that the notes were given in the execution of a contract in writing, for the purchase of certain lots with the erections thereon, in the city of Austin, and also a printing press, and a judgment and mortgage which the plaintiff had, before that time, obtained against one Whiting, on which there remained due about three thousand dollars ; that, by said contract, the plaintiff undertook to convey the said property and assign the judgment, &c., to Chalmers, in consideration of the sum of four thousand five hundred dollars, to be secured as specified in the contract, which is referred to and made a part of the answer ; that, in making the contract, Chalmers acted for himself and as agent of the defendants.   They averred that they complied with the stipulations of the contract on their part ; but that the plaintiff had failed and refused to comply with his contract to assign the judgment, and had collected the same, and applied the proceeds thereof to his own use.   Wherefore they claimed that the amount of the judgment should be deducted from the notes sued on ; and they prayed "such order and judgment of the Court, as shall seem equitable," &c.

The contract referred to in the answer, was given in evidence by the defendants, and is as follows :

" I will give you $4,500 for the property in Austin, pur-
" chased at the sale by you, you transferring the judgment

"and mortgage against Whiting to me, divided into three "equal annual instalments, with interest on the two last pay- "ments, to commence from the day of sale. I will give such "personal security as will be good, besides a lien on the pro- "perty to secure the payment of the purchase money ; the rent "from Pipkin to be yours. I will want four weeks to get such "other personal security as may be required, besides those of "Travis county.

" To Doct. W. R. Smith,
(Signed)        "JOHN G. CHALMERS."

" I accept the above proposition, to be closed according to "the above terms."      (signed)      " WM. R. SMITH."

The defendants gave in evidence the following instrument:

" I have this day sold to Dr. Chalmers the house, press, etc., "purchased at the mortgage sale, on the 2nd of this month, "formerly belonging to Samuel Whiting; and he is hereby "authorized to take entire possession of the said premises. " The consideration of said transfer is four thousand five hun- "dred dollars. Austin, September 4th, 1845."

(Signed)        " WM. R. SMITH."

Gillespie, a witness for the defendants, testified that two or three days after the sale referred to, as made on the 2nd of September, 1845, the plaintiff called on him, with the propo- sition contained in the instrument first above set out, and asked him if anything more could be made on his Whiting judgment, to which the witness answered, there could not. He then stated to witness, that Webb, Robertson & Horton were the sureties named by Chalmers, and inquired as to their sol- vency. On being assured of their solvency, he said that the forty-five hundred dollars would about cover his claim, and that he would let them take the whole concern.

Hunt, also a witness for the defendants, testified that in the fall of 1845, he met Dr. Chalmers in Galveston, and was told by him that he had come there for the purpose of closing a contract with Dr. Smith, for the purchase of lots, houses and a printing press in the city of Austin, and a jugdment held by

Smith against Whiting; that Smith refused to transfer the judgment, alleging that he did not so understand their agreement. The witness was afterwards called on to witness an understanding between the parties, by which Chalmers agreed to release Smith from transferring the judgment, provided the other parties, Webb, Horton and Robertson would assent to it; and upon that understanding the contract was executed.

Ayres, also a witness for the defendants, testified that the defendant Webb sent him for collection, an execution issued on the Whiting judgment in favor of the plaintiff, with directions to call on the plaintiff for instructions as to its collection. He did so, when the plaintiff said he did not know whether he was the owner of the execution or not; that it depended entirely on Judge Webb; that if it was to endanger the prompt payment of his debt, (the same secured by the notes sued on,) he would have nothing to do with the execution; and he refused to give the witness any instructions respecting the execution. The witness had been employed by the defendant Webb, to negotiate a release of the defendants from their obligation upon the notes now in suit. He did not ask the plaintiff to assign the judgment, because he was desired by the defendant Webb not to do so, but to effect a compromise. All his negotiations with the plaintiff, were with that object.— He was to ascertain for what sum the plaintiff would consent to keep the property conveyed, and release the defendants; and to accomplish his purpose, and induce the plaintiff to compromise, he urged upon him that he had not complied with his contract, in respect to the judgment, and could not compel performance on the part of the defendants. The plaintiff denied that he ever contracted to assign the Whiting judgment; said that when he accepted the proposition, he did not understand that it contained that stipulation or he would not have signed it; that he did not read the proposition—it was read to him, and he was deceived, &c.; that he had had an understanding with Dr. Chalmers, who agreed to release him, and he considered himself released, otherwise he would not have

executed the contract—but that he had never refused to assign the judgment.

The witness, acting under the instructions of the defendant Webb, caused the execution to be levied on a tract of land, known as the Moss league, which was sold as the property of Whiting. At the sale, no one would bid for the land, and the witness, in the name of the plaintiff, bid it off at its appraised value, and had the execution satisfied. He had since learned that Whiting's title was worthless, and had advised the defendant Webb to have the sale set aside. Since the execution was placed in his hands, in 1847, the witness thought no money could have been made upon the Whiting judgment.

There was other testimony tending to show that the judgment was worthless; Whiting having no property in the country to satisfy it.

The defendant Webb was examined as a witness for the plaintiff, and testified that in September, 1845, Dr. Chalmers informed him that he had been negotiating with Dr. Smith for the purchase of the Whiting property, and requested the witness to join him in the purchase, saying that Robertson and Horton would also join, if, in addition to the property, Smith would, at the price proposed, ($4,500,) also assign to the purchasers the balance of his judgment against Whiting. The witness understood Robertson to assent, on the same terms. Dr. Chalmers then drew up a proposition to Dr. Smith, embracing that stipulation, and, shortly after, informed the witness that Dr. Smith had assented to the proposition, and that the contract was to be consummated by the execution of the papers at Galveston at a future day. Some time (about four weeks) afterwards, the witness drew up, for Dr. Chalmers, a deed from Smith, to convey the property in Austin to Chalmers, Robertson, Horton and witness, and the notes and mortgage sued on. The notes and mortgage were then signed by Chalmers, Robertson and witness; and Chalmers was to obtain the signature of Horton, on his way to Galveston. On the return of Chalmers from Galveston, he informed wit-

ness and the defendant Robertson, that he had delivered the notes and mortgage to Smith, and had obtained a deed to the property; but could not get an assignment of the judgment; that Smith positively refused to assign it, giving as a reason that when he assented to the proposition, he did not know that it embraced any such stipulation; that if required to assign the judgment, Smith would not have executed the contract; that he (Chalmers) thought it better to yield the point, as it would not do to commence with a law suit, and therefore he concluded the matter as stated. On witness saying to Chalmers that he knew he (witness) would not have joined in the purchase, but for that stipulation; that he would not have closed the business upon any other terms, and that he was disposed to have nothing more to do with it, Chalmers replied that he and Robertson were not bound; that he had stated to Smith, that he could not bind them, and they had a right to refuse if they chose, but he hoped they would not withdraw; that the property was worth the money, and they could easily pay for it. After a good deal of conversation on the subject, they consented to let matters remain as they were, and an understanding was then had between himself, Chalmers and Robertson as to the management of the property and the application of the proceeds to the payment of the notes. The witness stated he did not give his consent to release Smith from his obligation to assign the judgment, and, in his subsequent efforts to compromise, he urged, and caused to be urged upon Smith, his liability on that score, as an inducement to the proposed compromise. There was testimony that Robertson went into possession of the premises conveyed by Smith to the defendants. There was other evidence in the case, which it is not material to notice.

On the facts in evidence, the Court (a jury being waived) gave judgment for the plaintiff, and the defendant Robertson appealed.

*A. J. Hamilton* and *J. A. Green*, for appellant.

*I. A. & G. W. Paschal*, for appellee.

Robertson v. Smith.

WHEELER, J. The defence rested on the alleged refusal of the plaintiff, to assign to the defendants, the unsatisfied balance of his judgment against Whiting, and the conversion of it to his own use; and the question to be determined is, whether this defence was sustained by the proof. This must depend mainly on the conclusions of fact, to be deduced from the evidence.

The original agreement, entered into at Austin, between Smith and Chalmers, contained the stipulation that the former should assign to the latter the judgment in question. The reason assigned by him for refusing to do so, when called upon by Chalmers to execute their agreement, was that when he accepted the proposition of the latter, he was not aware that it contained that stipulation. The evidence, however, will not warrant that conclusion. But whether he knew of the stipulation or not, is immaterial, if no deception was practiced upon him, and by the use of ordinary diligence he might have known. There is no evidence that he was deceived or misled by any misrepresentation or concealment of the fact. If mistaken as to the terms of the proposition, it must be ascribed solely to his own carelessness or inattention; and for the consequences of these, the party is himself alone responsible. They afford him no ground of relief against the stipulations of his contract. There can be no question that, upon the evidence before us, the undertaking to assign the judgment in question, was obligatory upon the plaintiff; and is still binding upon him, unless he has been released from its performance. So far as Chalmers was concerned, he unqestionably did release the plaintiff; whether absolutely, or conditionally, may admit of some doubt. From the whole evidence, however, I incline to the opinion that it was intended and understood to be an absolute release so far as Chalmers was concerned. He was acting as the agent of the other contracting parties; and though he did not undertake to bind them absolutely, but only in case they assented, yet when he apprised them of what he had done, and that the plaintiff had executed the contract in

27

the confidence that he was, or would be released from the stipulation to assign the judgment, it would seem to have been but fair and just that they should either assent to or disaffirm his acts. And such seems to have been the intention and understanding of the defendants Webb and Robertson, at the time. They accordingly spoke of having nothing more to do with the business, evincing a disposition to disavow the acts of their agent, and to disaffirm the contract altogether. Upon the solicitation of Chalmers, however, who used the argument that the property was worth what he had contracted to give for it, independently of the judgment, they finally " consented to let matters remain as they were," that is, as Chalmers had placed them, in concluding the business with the plaintiff; and proceeded to do acts confirmatory of that contract, taking possession and disposing of the property. The appellant and his co-defendant Webb then manifested the intention to acquiesce in the arrangement which their agent had made; and though the defendant Webb states in his testimony, that he did not give his consent to release the plaintiff from his obligation to assign the judgment, yet I should be inclined to regard the acts of himself and his co-defendant Robertson as amounting virtually to such release; from which it would result, that the plaintiff was thereafter under no obligation to these parties, to make the assignment in question; and that his having failed to do so could not avail them as a ground of defence or of relief in this suit. This conclusion, however, is not satisfactory to a majority of the Court.

It becomes necessary, therefore, to inquire whether the defence is made out, in so far as it seeks to charge the plaintiff with the amount of the judgment in question. And we are all of opinion that it is not. The proof fails to establish that the plaintiff has collected any part of the judgment; or that he has in any manner appropriated or converted it to his own use. There is no evidence that the plaintiff has derived any benefit, or that the defendants have sustained any injury whatever, in consequence of his failure to make the assignment.

The defendant does not appear to have done any act in relation to the judgment, or to have exercised any control over it. But the evidence is, that the defendant Webb, acting, as we must suppose, for himself and his co-defendants, took control of the collection of the judgment. The witness Ayres was the agent of the defendant and acted under his instructions. And though he used the name of the plaintiff, in bidding in the land levied on, and causing the execution to be returned satisfied, he did so without authority from the plaintiff. The plaintiff had refused to give any instructions respecting the execution in the hands of Ayres, or to exercise any control over it. Ayres was not his agent and had no authority from him to act in the premises. And there can be no pretence that his acts can bind the plaintiff, or that he can be held responsible to the defendants, for the unauthorized use of his name by their agent.

After the release of the plaintiff by Chalmers, he does not appear ever to have been called on or required to assign the judgment. Nor do we hear of any complaint of his failure to do so, until the notes became due, and the plaintiff was urging their payment. After what had passed between the plaintiff and Chalmers, respecting the release, the defendants ought to have notified the plaintiff that they did not assent to the release, but would require him to make the assignment. They do not appear, however, to have given the plaintiff any notice of their intentions, until they were themselves in default in making payment; and they then only urged the non-assignment of the judgment as an inducement to a compromise. It appears that the defendants might then have had the judgment assigned to them, upon performance of their part of the contract. But they seem not to have desired it. Indeed, the judgment appears to have been regarded by all parties as of very doubtful value; and the evidence goes far to warrant the conclusion that, in truth, it was and still is wholly worthless. It seems at least clear, that since it became the subject of controversy, no one has or could have derived any benefit from it.

There certainly is no evidence to warrant the conclusion that the plaintiff has converted it to his use; or that his omission to assign it, has deprived the defendants of any benefit or advantage they might have derived from it. The Court are of opinion, therefore, that the plaintiff is not chargable with the judgment, as claimed by the appellant; that if any thing has been done to embarrass its future collection, it was by no fault of the plaintiff, and that he can not be held responsible on that account; and, finally, that full and complete justice can be done between the parties, by so re-forming the judgment of the Court below, as to require the plaintiff to make the proper assignment of the judgment in question; and that the judgment under revision be, in other respects affirmed.

Judgment re-formed.